UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

CHARLES SIMON, on behalf of himself and
all others similarly situated,

               **Plaintiff,**

   - against -

KEYSPAN CORPORATION and
MORGAN STANLEY CAPITAL GROUP
INC.,

               **Defendants.**
------------------------------------------------------X

**OPINION AND ORDER**

**10 Civ. 5437  (SAS)**



**SHIRA A. SCHEINDLIN, U.S.D.J.:**

       On March 22, 2011, this Court issued an Opinion and Order (the

"Order") dismissing, with prejudice, plaintiff's federal and state antitrust claims

based upon alleged violations of the Sherman Act, the Clayton Act, and the

Donnelly Act.[1]  I also dismissed plaintiff's remaining state law claims including his

unjust enrichment claim.  Plaintiff now seeks reconsideration of the Order on the

ground that this Court "overlooked controlling law and factual matters that might

reasonably be expected to alter the Court's decision."[2]  Both defendants, KeySpan

Corporation ("KeySpan") and Morgan Stanley Capital Group Inc., oppose

---

[1]     *See Simon v. Keyspan Corp.*, No. 10 Civ. 5437, 2011 WL 1046119 (S.D.N.Y. Mar. 22, 2011).  Familiarity with this Opinion and Order is assumed.

[2]     *See* Plaintiff's Memorandum of Law in Support of Motion for Reconsideration of the Court's March 22, 2011 Order and Opinion ("Pl. Mem.") at 1.

plaintiff's motion.[3]  Because plaintiff has failed to identify any legal or factual issue overlooked or erroneously determined by this Court, his motion for reconsideration is denied.[4]

## I.    LEGAL STANDARD

Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court.[5]  A motion for reconsideration is appropriate where "'the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'"[6]  A motion for reconsideration may also be granted to "'correct a clear error or prevent

---

[3]    *See* Defendants' Joint Memorandum of Law in Opposition to Plaintiff's Motion for Reconsideration ("Def. Mem.").  Plaintiff responded to defendants' memorandum with yet another memorandum.  *See* Plaintiff's Reply Memorandum in Support of Motion for Reconsideration of the Court's March 22, 2011 Order and Opinion ("Pl. Reply").

[4]    Although plaintiff's Complaint remains dismissed, that dismissal will be modified to explicitly note that it is without prejudice to plaintiff's right to file a complaint with the Federal Energy Regulatory Commission ("FERC").  *See Schafer v. Exelon Corp.*, 619 F. Supp. 2d 507, 516 (N.D. Ill. 2007) (stating that "[t]he lack of a court remedy is the consequence of a federal statutory scheme assigning FERC the exclusive authority to determine a reasonable rate" but that the Federal Power Act provides persons with the opportunity to file a complaint with FERC and obtain any appropriate relief) (citing 16 U.S.C. § 824e and 18 C.F.R. § 385.206).

[5]    *See Patterson v. United States*, No. 04 Civ. 3140, 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006 ) ("The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court.") (citing *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983)).

[6]    *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003) (quotation marks omitted).

manifest injustice.'"[7]

      The purpose of Local Rule 6.3 is to "'ensure the finality of decisions

and to prevent the practice of a losing party examining a decision and then

plugging the gaps of a lost motion with additional matters.'"[8]  Local Rule 6.3 must

be "narrowly construed and strictly applied so as to avoid repetitive arguments on

issues that have been considered fully by the Court."[9]  Courts have repeatedly been

forced to warn counsel that such motions should not be made reflexively to reargue

"'those issues already considered when a party does not like the way the original

motion was resolved.'"[10]  A motion for reconsideration is not an "opportunity for

making new arguments that could have been previously advanced,"[11] nor is it a

---

[7]    *RST (2005) Inc. v. Research in Motion Ltd.*, No. 07 Civ. 3737, 2009 WL 274467, at *1 (S.D.N.Y. Feb. 4, 2009) (quoting *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

[8]    *Grand Crossing, L.P. v. United States Underwriters Ins. Co.*, No. 03 Civ. 5429, 2008 WL 4525400, at *3 (S.D.N.Y. Oct. 6, 2008) (quoting *S.E.C. v. Ashbury Capital Partners*, No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001)).  *Accord Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, 233 F.R.D. 355, 361 (S.D.N.Y. 2005) ("[A] movant may not raise on a motion for reconsideration any matter that it did not raise previously to the court on the underlying motion sought to be reconsidered.").

[9]    *United States v. Treacy*, No. 08 CR 366, 2009 WL 47496, at *1 (S.D.N.Y. Jan. 8, 2009) (quotation marks omitted).  *Accord Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (holding that a court will deny the motion when the movant "seeks solely to relitigate an issue already decided").

[10]    *Makas v. Orlando*, No. 06 Civ. 14305, 2008 WL 2139131, at *1 (S.D.N.Y. May 19, 2008) (quoting *In re Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996)).

[11]    *Associated Press v. United States Dep't of Defense*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005).

substitute for appeal.[12]

## II.   DISCUSSION

Plaintiff argues that this Court "erred in ruling that the market prices which were charged during the relevant period were 'filed rates' entitled to the protection of the filed rate doctrine."[13]  Plaintiff further argues that this Court overlooked controlling Supreme Court precedent, namely, *Morgan Stanley Capital Group Inc. v. Public Utility District. No. 1 of Snohomish County*,[14] in determining that the prices charged by KeySpan were filed rates.  Both of these arguments are without merit.  Finally, plaintiff notes that the Supreme Court has never applied the filed rate doctrine to bar federal antitrust claims in the context of the Federal Power Act and argues that it was error for this Court to do so.  This same argument was made in plaintiff's opposition to defendants' motion to dismiss and was rejected by this Court *sub silentio*.  This argument will now be squarely addressed in light of plaintiff's motion for reconsideration.

---

[12]     *See Grand Crossing*, 2008 WL 4525400, at *3.

[13]     Pl. Mem. at 2.

[14]     554 U.S. 527 (2008) ("*Morgan Stanley*").

4

**A.     The Court Did Not Commit Clear Error in Dismissing All of Plaintiff's Claims Under the Filed Rate Doctrine**

In the Order, plaintiff's federal antitrust claims, Counts I through VI, were initially dismissed on the ground that plaintiff lacked antitrust standing.[15] The filed rate doctrine served as an *alternative* ground in which these claims were dismissed.[16]   However, as subsequently explained in the Order, the filed rate doctrine is a basis in which to dismiss *all* of plaintiff's claims, both federal and state.[17]   If this Court adheres to its finding that the filed rate doctrine applies to the instant action, that finding is dispositive as to each of plaintiff's claims.[18]

**1.     Application of the Filed Rate Doctrine to Market-Based Prices**

Contrary to plaintiff's view, prices that comply with market-based rate tariffs ("MBR Tariffs") are "filed rates" protected by the filed rate doctrine.  The Federal Energy Regulatory Commission ("FERC" or the "Commission") specifically authorized KeySpan, under its MBR Tariff, to set its rates for installed

---

[15]     *See Simon*, 2011 WL 1046119, at *8-*11.

[16]     *See id.* at *11 ("Even if plaintiff did have antitrust standing, his claims would nonetheless be dismissed on an alternative ground, namely, the filed rate doctrine.").

[17]     *See id.* at *12 ("Accordingly, the filed rate doctrine serves as an alternative ground in which to dismiss all of plaintiff's claims, based on both federal and state law.").

[18]     The Supreme Court has held that the filed rate doctrine bars state causes of action as well as federal.  *See Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 580, 584 (1981) ("*Arcla*").

capacity at any price within the range permitted under the NYISO Tariff.[19]  Where

FERC has approved a rate pursuant to a tariff, market-based or otherwise, courts

must "give effect to Congress' desire to give FERC plenary authority over

interstate wholesale rates[.]"[20]  Accordingly, courts have uniformly held that prices

that comply with MBR tariffs, such as KeySpan's MBR Tariff, are "filed rates"

deserving of protection under the filed rate doctrine.[21]  In arguing to the contrary,

---

[19]    *See Simon*, 2011 WL 1046119, at *2 ("FERC authorized the rate that KeySpan, under the NYISO Tariff, could offer capacity in the NYC Capacity Market auctions.").

[20]    *Nantahala Power and Light Co. v. Thornburg*, 476 U.S. 953, 966 (1986) ("*Nantahala*") ("FERC clearly has exclusive jurisdiction over the rates to be charged Nantahala's interstate wholesale customers.") (citing 16 U.S.C. § 824(b); *New England Power Co. v. New Hampshire*, 455 U.S. 331, 340 (1982)).

[21]    The First, Third, Fifth, and Ninth Circuits are in agreement. *See, e.g., Wah Chang v. Duke Energy Trading & Mktg., LLC*, 507 F.3d 1222, 1224-26 (9th Cir. 2007) (holding that the filed rate doctrine barred claims challenging allegedly anti-competitive rates authorized by tariffs approved by FERC "under its market-based rate setting approach"); *Public Util. Dist. No. 1 of Snohomish County v. Dynegy Power Mktg., Inc.*, 384 F.3d 756, 761 (9th Cir. 2004) (rejecting the argument that three preemption-related doctrines – the filed rate doctrine, field preemption, and conflict preemption – do not apply when market-based rates are involved); *Public Util. Dist. No. 1 of Grays Harbor County v. IDACORP, Inc.*, 379 F.3d 641, 650-52 (9th Cir. 2004) ("*Gray's Harbor*") ("[W]hile market-based rates may not have historically been the type of rate envisioned by the filed rate doctrine, . . . they do not fall outside of the purview of the doctrine."); *Utilimax.com, Inc. v. PPL Energy Plus, LLC*, 378 F.3d 303, 305-06 (3d Cir. 2004) (dismissing claims under the Sherman Act and Clayton Act and various Pennsylvania state laws on the ground that "a plaintiff may not sue the supplier of electricity based on rates that, although alleged to be the result of anticompetitive conduct, were filed with the federal agency responsible for overseeing such rates"); *Town of Norwood v. New England Power Co.*, 202 F.3d 408, 419 (1st Cir. 2000) (finding the filed rate applicable "where the 'regulated' rates have been left to the free market" because "FERC is still responsible for ensuring 'just and reasonable' rates"). *Cf. Texas Commercial Energy v. TXU Energy, Inc.*, 413 F.3d 503, 509-10 (5th Cir. 2005) (barring, under the filed rate doctrine, claims challenging market-based rates filed with a state public utility commission). Lower courts are also in agreement. *See, e.g., In re NRG Energy, Inc.*, No. 03–13024, 2006 WL 2385217, at *5 (Bankr. S.D.N.Y. May 17, 2006) ("Here, the Claimants' state law antitrust and unfair competition claims essentially require the Court to

plaintiff ignores the fact that FERC confirmed that the prices charged by KeySpan complied with the FERC-approved "filed rate."[22]  Moreover, the prices charged by KeySpan were consistent with FERC's expectations when it approved the MBR and NYISO Tariffs and the price rules set forth therein.[23]  This Court did not err when it ruled that the filed rate doctrine applies to rates determined in accordance with FERC-approved market-based sales of electricity.

### 2. *Morgan Stanley* Is Not Controlling Precedent for Purposes of the Filed Rate Doctrine

Plaintiff quotes the following language from *Morgan Stanley* in a misguided attempt to show that the filed rate doctrine is inapplicable to market-based contracts for the sale of electricity:

---

compute a hypothetical reasonable rate, and award damages in the form of an allowable claim measured by the difference between the reasonable rate and the market-based rates paid by the purchasers.  Congress, however, has granted FERC the exclusive jurisdiction in the field of setting the reasonable rate for the purchase and sale of wholesale electricity, and the Claimants' efforts to enforce their claims in this Court conflict with that Congressional purpose. . . .  In addition, the filed rate doctrine prevents this Court from setting a different, hypothetical fair rate against which to measure the amount of the allowable claims."); *Schafer*, 619 F. Supp. 2d at 514 ("Market-based rates for sales made pursuant to FERC-approved tariffs are filed rates within the meaning of the filed rate doctrine.").  *Cf. Jacquet v. Dominion Transmission, Inc.*, No. 2:05-0542, 2010 WL 5487248, at *8 (S.D.W.Va. Dec. 30, 2010) (finding that the natural gas rates at issue, although market-based, were federally-authorized rates deserving of protection under the filed rate doctrine).

[22]    *See Gray's Harbor*, 379 F.3d at 651 ("[T]he market-based rate regime established by FERC continues FERC's oversight of the rates charged.").

[23]    *See Simon*, 2011 WL 1046119, at *2 ("The NYISO Tariff sets the rules for conducting auctions, authorizes the prices that suppliers can offer in the auction, and specifies how the offer prices at auction are used to determine the prices that LSE's pay for installed capacity.").

> [G]iven that the Commission's passive permission for a
> rate to go into effect does not constitute a finding that the
> rate is just and reasonable, it would be odd to treat that
> initial "opportunity for review" as curtailing later
> challenges.[24]

*Morgan Stanley* makes no mention of the filed rate doctrine. Rather, the case

involves the application of the *Mobile-Sierra* doctrine to bilateral contracts for the

sale of wholesale electricity.[25] The Federal Power Act ("FPA") "requires all

wholesale-electricity rates to be 'just and reasonable.'"[26] Moreover, the FPA

"permits utilities [KeySpan] to set rates with individual electricity purchasers [Con

Ed] through bilateral contracts."[27] With regard to the rates set forth in such

contracts, the Supreme Court stated:

> Under the *Mobile-Sierra* doctrine, the Federal Energy
> Regulatory Commission (FERC or Commission) must
> presume that the rate set out in a freely negotiated
> wholesale-energy contract meets the "just and reasonable"
> requirement imposed by law. The presumption may be
> overcome only if FERC concludes that the contract
> seriously harms the public interest.[28]

---

[24]     554 U.S. at 546.

[25]     The fact that *Morgan Stanley* addressed bilateral contracts for the sale of
wholesale electricity, not auctions for the sale of installed capacity, arguably makes the entire
decision distinguishable from the case *sub judice*. *See infra* n.44.

[26]     554 U.S. at 531 (citing 16 U.S.C. § 824d(a)).

[27]     *Id.*

[28]     *Id.* at 530.

*Morgan Stanley* addressed the following two questions: (1) does the *Mobile-Sierra* presumption apply only when FERC has "had an initial opportunity to review a contract rate without the presumption" and (2) "does the presumption impose as high a bar to challenges by purchasers of wholesale electricity as it does to challenges by sellers?"[29]  In answering those questions, the Supreme Court held that "FERC may abrogate a valid contract only if it harms the public interest."[30] The case makes no mention of the filed rate doctrine at all, much less whether that doctrine bars a collateral attack on a FERC-authorized rate.[31]  The "just and reasonable" requirement is analytically distinct from whether a filed rate is protected from collateral attack by the filed rate doctrine.  Therefore, plaintiff's statement – "as *Morgan Stanley* makes clear, the actual market prices charged have never been determined to be 'just and reasonable' under Section 205 of the Federal Power Act"[32] – is irrelevant to the applicability of the filed rate doctrine.  The fact that "FERC does not fix any specific market prices as exclusively 'just and

---

[29]    *Id.* at 531.

[30]    *Id.* at 547.

[31]    *Morgan Stanley* involved a direct appeal, to the Ninth Circuit, from a FERC ruling which held that the purchasers of wholesale electricity failed to demonstrate that the contracts in issue threatened the public interest. *See id.* at 543.

[32]    Pl. Mem. at 3.

reasonable' for market-based sellers"[33] does not mean that MBRs are not filed rates for purposes of the filed rate doctrine.

### 3.    This Court's Reliance on *Gray's Harbor* Was Proper

Plaintiff also argues that *Morgan Stanley* "directly refuted" a central premise of FERC's Order on Complaint in *California ex rel. Bill Lockyer v. British Columbia Power Exchange Corporation*[34] (the "FERC Order") which, in turn, arguably invalidates this Court's reliance on *Gray's Harbor*[35] and its holding that the filed rate doctrine applies to MBRs.  According to plaintiff, the main premise of the FERC Order in *British Columbia* "is that FERC's authorization to sell at market-based rates *automatically* constitute[s] a finding that all future market prices satisfy the 'just and reasonable' requirement of Section 205 of the Federal Power Act."[36]   In plaintiff's view, *Morgan Stanley* holds just the opposite – that FERC's authorization of MBRs does not constitute a finding that such rates are just and reasonable under the FPA.[37]

---

[33]      *Id.* at 4.

[34]      99 F.E.R.C. ¶ 61,247, Docket No. EL02-71-000, 2002 WL 32035504 (May 31, 2002) ("*British Columbia*").

[35]      *See supra* n.21.

[36]      Pl. Mem. at 8 (emphasis in original).

[37]      *See id.* at 8 & n.6 (quoting *Morgan Stanley*, 554 U.S. at 546).

The problem with plaintiff's argument is that he incorrectly equates the just and reasonable *Mobile-Sierra* presumption with an actual finding by FERC that a contract rate is just and reasonable. The rationale for the presumption is explained in detail in *British Columbia*, which states:

> Market-based rates are permitted by the FPA. Use of market-based rates has been approved as satisfying the just and reasonable standard in certain circumstances. The prerequisite for approval of market-based rates is a finding that the seller lacks or has mitigated its market power in the relevant market. So long as a seller lacks market power and thus buyers have alternatives, market-based rates will meet the just and reasonable standard. This satisfies the FPA § 205(e) standard that use of market-based rates by a seller is just and reasonable.[38]

As for the filings required of a seller, the FERC Order states:

> In the case of market-based rates, which rest on a finding that a seller (and its affiliates) cannot exercise market power, the Commission requires quarterly filings to assure that the seller is not exercising market power in the relevant market. . . . As these filing procedures satisfy the filed rate doctrine for market-based rates, we reject the Attorney General's implication that the filing of a specified numerical rate or a clearly-stated rate formula are the only means to satisfy the statutory requirement for market-based rate tariffs.[39]

Finally, with regard to the timing of FERC review of MBRs, the FERC Order

---

[38]   *British Columbia*, 2002 WL 32035504, at *11 (citations omitted).

[39]   *Id.* at *12.

11

states:

> Prior review consists, however, not of the particular prices
> agreed to by willing buyers and sellers.  Rather, it consists
> of analysis to assure that the seller lacks or has mitigated
> market power so that its prices will fall within a zone of
> reasonableness.  In the case of market-based rates, the just
> and reasonable standard of FPA § 205(e) is satisfied by the
> Commission's determination, prior to the effectiveness of
> those rates, that the utility (and its affiliates) lacks market
> power or has taken sufficient steps to mitigate market
> power.[40]

This language demonstrates that the central premise of *British Columbia* is that the

mitigation of market power, as evidenced through quarterly filings,  justifies the

*Mobile-Sierra* presumption.  *Morgan Stanley* holds that any "freely negotiated"

contract rate is presumptively just and reasonable unless it "seriously harms" the

public interest.[41]  There is no conflict between these two holdings.

Moreover, plaintiff misconstrues the language quoted from *Morgan*

*Stanley*, taking it out of context.  When the Supreme Court stated "that the

Commission's passive permission for a rate to go into effect does not *constitute a*

*finding* that the rate is just and reasonable,"[42] it was referring to the fact that FERC

does not subject freely negotiated contracts, entered into under MBR tariffs, to the

---

[40]    *Id.*

[41]    *Morgan Stanley*, 554 U.S. at 530.

[42]    *Id.* at 546 (emphasis added).

12

requirement of immediate filing.  That fact does not preclude subsequent FERC review in response to later challenges.  The above-quoted language simply means that the application of the just and reasonable *presumption* is not the equivalent of a just and reasonable *finding* by FERC.  The central premise of *British Columbia* – that the mitigation of market power, as evidenced by current filing and reporting requirements, satisfies the just and reasonable standard – is not refuted by *Morgan Stanley*, directly or otherwise.  Accordingly, the Ninth Circuit's reliance on *British Columbia* in *Gray's Harbor* remains appropriate, as does this Court's reliance on *Gray's Harbor*.[43]

### B.   This Court Properly Applied the Filed Rate Doctrine in the Context of the Federal Power Act[44]

Plaintiff argues that the Supreme Court has never applied the filed rate

---

[43]     In any event, "[p]laintiff's causes of action are all premised on the assertion that plaintiff was injured in the retail electricity market because KeySpan offered to sell its capacity in the installed capacity auctions at 'supracompetitive' prices." *Simon*, 2011 WL 1046119, at *11.  Thus, for plaintiff to prevail on his claims, this Court would have to second-guess FERC and determine a hypothetical rate different from the rate that KeySpan lawfully charged as authorized by FERC.  This would require the Court to do "precisely what the filed rate doctrine forbids." *Arcla*, 453 U.S. at 579.

[44]     It must also be noted that plaintiff's Complaint makes *no* mention of bilateral contracts for the sale of installed capacity or wholesale electricity.  Rather, the entire thrust of plaintiff's Complaint is that KeySpan manipulated prices in the NYC Capacity Market auctions by withholding capacity. *See, e.g.,* Complaint ¶¶ 1-6, 15-21, 23-24, 36-40.  However, FERC authorized the rate that KeySpan could offer its capacity in those auctions by way of the NYISO Tariff, which set the "bid cap" or highest price KeySpan could charge during the relevant time period. *See Simon*, 2011 WL 1046119, at *2.  Plaintiff now switches gears, from auctions to bilateral contracts, in a disingenuous effort to persuade the Court to reverse its ruling.

doctrine to bar federal antitrust claims in the context of the FPA and that it was error for this Court to do so here.[45] The Supreme Court has, however, applied the filed rate doctrine to bar federal antitrust claims within the context of the Interstate Commerce Act, which plaintiff argues is markedly different from the FPA.[46] In fact, "it is in the antitrust context that the Supreme Court has consistently applied the filed rate doctrine."[47] Furthermore, the Supreme Court has applied the filed rate to the FPA for purposes other than the antitrust laws.[48]

I reject plaintiff's argument that courts may bar federal antitrust claims within the context of the Interstate Commerce Act but not within the context of the FPA because of differences in the rate-setting provisions of the two

---

[45]    *See* Pl. Mem. at 4-7.

[46]    *See, e.g., Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 415-17, 422 (1986) (holding that private shippers could not bring treble damages antitrust action based on allegations that rates filed with the Interstate Commerce Commission by carriers were fixed pursuant to an agreement prohibited by the Sherman Act as the rates were duly submitted, lawful rates under the Interstate Commerce Act)*; Keogh v. Chicago & N.W. Ry. Co.*, 260 U.S. 156, 162 (1922) (holding that a private shipper could not recover treble damages for antitrust violations where railroad rates, although fixed pursuant to conspiracy between the carriers, were approved as reasonable and nondiscriminatory by the Interstate Commerce Commission).

[47]    *Wegoland Corp. v. NYNEX Corp.*, 27 F.3d 17, 21 (2d Cir. 1994) (citing *Square D* and *Keogh*).

[48]    *See, e.g, Nantahala*, 476 U.S. at 966 (applying the doctrine to prevent a state commission from setting rates different from those ordered by FERC); *Federal Power Comm'n v. Southern Cal. Edison Co.*, 376 U.S. 205, 209 (1964) (applying the doctrine to confirm that FERC's jurisdiction over wholesale electricity is plenary); *Montana-Dakota Utils. Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246, 249-52 (1951) (applying the doctrine to bar claims alleging that FERC-approved rates were obtained by fraud).

14

statutes.[49]  This argument fails for the same reasons that the filed rate doctrine

applies to MBRs.[50]  Furthermore, the fact that the Supreme Court has not yet

barred federal antitrust claims under the FPA does not mean that there is a blanket

prohibition on doing so.  Rather, the collective wisdom of the above-cited Supreme

Court decisions firmly establishes that courts cannot usurp FERC's exclusive

authority over wholesale rates (or any contract affecting such rates) that are

consistent with FERC-approved tariffs.[51]  "[A]llowing individual ratepayers to

attack the filed rate 'would undermine the congressional scheme of uniform rate

regulation.'"[52]  Consistent with this Supreme Court precedent, the Second Circuit

has held that the filed rate doctrine applies to *any* claim that impermissibly requires

---

[49]      *See Morgan Stanley*, 554 U.S. at 531 ("Unlike the Interstate Commerce Act, however, the FPA also permits utilities to set rates with individual electricity purchasers through bilateral contracts."); *Verizon Commc'ns Inc. v. FCC*, 535 U.S. 467, 479 (2002) (noting that in enacting the FPA, "Congress departed from the scheme of purely tariff-based regulation and acknowledged that contracts between commercial buyers and sellers could be used in ratesetting").

[50]      *See San Diego Gas & Elec. Co. v. Sellers of Energy & Ancillary Serv. into Mkts. Operated by the Cal. Indep. Sys. Operator Corp. & the Cal. Power Exch.*, 96 F.E.R.C. ¶ 61,120, 2001 WL 1704964, at *9 n.31 (July 25, 2001) ("[T]he rationales underlying the filed rate doctrine apply to market-based rates.").

[51]      *See, e.g., Mississippi Power & Light Co. v. Mississippi*, 487 U.S. 354, 375 (1988) ("The reasonableness of rates and agreements regulated by FERC may not be collaterally attacked in state or federal courts. The only appropriate forum for such a challenge is before the Commission or a court reviewing the Commission's order.").

[52]      *Wegoland*, 27 F.3d at 19 (quoting *Arcla*, 453 U.S. at 579).

a court to perform an agency's rate-making function.[53]  I see no reason why the

filed rate doctrine should not apply with equal force to antitrust claims within the

context of the FPA.  Plaintiff's attempt to distinguish the FPA from the Interstate

Commerce Act for purposes of applying the filed rate doctrine is therefore rejected.

In short, I again conclude that the filed rate doctrine serves as a basis

to dismiss all of plaintiff's claims, both federal and state.  Nonetheless, to ensure a

full record for appellate review, I will now address plaintiff's arguments regarding

his lack of antitrust standing.

### C.   This Court Did Not Overlook Facts or Controlling Law in Finding that Plaintiff Lacked Antitrust Standing

Under the so-called "direct purchaser rule," "only a direct purchaser

[Con Ed] can bring an antitrust action against a seller [KeySpan] for a wrongful

overcharge."[54]  In *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*[55] and

---

[53]      *See Marcus v. AT&T Corporation*, 138 F.3d 46, 58-59 (2d Cir. 1998) (the filed rate doctrine does not "depend on the nature of the cause of action the plaintiff seeks to bring" and "is applied strictly to prevent a plaintiff from bringing a cause of action even in the face of apparent inequities").

[54]      *Simon*, 2011 WL 1046119, at *8.

[55]      392 U.S. 481, 494 (1968) ("*Hanover Shoe*") ("We recognize that there might be situations – for instance, when an overcharged buyer [Con Ed] has a pre-existing 'cost-plus' contract, thus making it easy to prove that he has not been damaged – where the considerations requiring that the passing-on defense not be permitted in this case would not be present.").

*Illinois Brick Company v. Illinois*,[56] the Supreme Court suggested that an exception

to the direct purchaser rule may be warranted where an indirect purchaser, such as

plaintiff, buys a fixed quantity, regardless of price, under a pre-existing cost-plus

contract (the "cost-plus contract exception").  However, this Court has held that

plaintiff "cannot use the cost-plus contract exception to avoid application of the

direct purchaser rule."[57]  With regard to this holding, plaintiff argues that this Court

"overlooked and oversimplified facts regarding the manner in which Con Ed

customers pay for their electricity."[58]  In yet another attempt to take advantage of

the cost-plus contract exception, plaintiff repeats the argument "that Con Ed is

completely insulated from bearing any of the costs of this overcharge and has a

pre-existing legal right to pass on all of these costs to its customers as a group, and

Con Ed does in fact pass through 100% of its costs for capacity without discretion

to raise or lower rates."[59]

---

[56]      431 U.S. 720, 736 (1977) ("*Illinois Brick*") ("In [a pre-existing cost-plus contract] situation, the [direct] purchaser [Con Ed] is insulated from any decrease in its sales as a result of attempting to pass on the overcharge, because its customer is committed to buying a fixed quantity regardless of price. The effect of the overcharge is essentially determined in advance, without reference to the interaction of supply and demand that complicates the determination in the general case.").

[57]      *Simon*, 2011 WL 1046119, at *10.

[58]      Pl. Mem. at 9.

[59]      *Id.* at 11.

In *Kansas v. UtiliCorp United, Inc.*,[60] the Supreme Court rejected the cost-plus contract exception within the context of a regulated public utility in the natural gas industry.[61]  In *Kansas*, the petitioners, the States of Kansas and Missouri, brought an antitrust action against gas producing companies and a pipeline company for overcharging a public utility for natural gas.[62]  The issue addressed in *Kansas* was who may sue under the antitrust laws where "suppliers overcharge a public utility for natural gas and the utility passes on the overcharge to its customers."[63]  The Supreme Court held that only the public utility could sue because it alone suffered an antitrust injury.[64]  In reaching that conclusion, the Supreme Court stated:

> The [utility] did not sell the gas to its customers under a pre-existing cost-plus contract.  Even if we were to create an exception for situations that merely resemble those

---

[60]      497 U.S. 199 (1990) ("*Kansas*").

[61]      *Id.* at 217 ("The suggestion in *Hanover Shoe* and *Illinois Brick* that a departure from the direct purchaser rule may be necessary when an indirect purchaser buys under a pre-existing cost-plus contract does not justify an exception in this case.").  *See also id.* at 208 ("Although the rationales of *Hanover Shoe* and *Illinois Brick* may not apply with equal force in all instances, we find it inconsistent with precedent and imprudent in any event to create an exception for regulated public utilities.").

[62]      *Id.*  ("Acting as *parens patriae*, the petitioners asserted the claims of all natural persons residing within Kansas and Missouri who had purchased gas from any utility at inflated prices.").

[63]      *Id.* at 204.

[64]      *See id.*

governed by such a contract, we would not apply the exception here. Our statements above show that we might allow indirect purchasers to sue only when, by hypothesis, the direct purchaser will bear no portion of the overcharge and otherwise suffer no injury. That certainty does not exist here.

The utility customers made no commitment to purchase any particular quantity of gas, and the utility itself had no guarantee of any particular profit. Even though the [utility] raised its prices to cover its costs, we cannot ascertain its precise injury because . . . we do not know what might have happened in the absence of an overcharge. In addition, even if the utility customers had a highly inelastic demand for natural gas, the need to inquire into the precise operation of market forces would negate the simplicity and certainty that could justify a cost-plus contract exception. Thus, although we do not alter our observations about the possibility of an exception for cost-plus contracts, we decline to create the general exception for utilities sought by the petitioners.[65]

For essentially the same reasons stated in *Kansas*, this Court declines to apply the cost-plus contract exception to the instant case. This Court remains dubious that Con Ed is a complete pass-through entity and did not sustain any direct antitrust injury of its own. *First*, the Supreme Court has recognized the differences between a capacity market and a wholesale energy market.

In a capacity market, in contrast to a wholesale energy market, an electricity provider purchases from a generator an option to buy a quantity of energy, rather than purchasing the energy itself. To maintain the reliability of

---

[65]     *Id.* at 218 (citations omitted).

> the grid, electricity providers [such as Con Ed] generally *purchase more capacity, i.e.*, rights to acquire energy, *than necessary* to meet their customers' anticipated demand.[66]

*Second*, plaintiff's own allegations support the proposition that providers of electricity, such as Con Ed, purchase installed capacity in excess of customer demand for retail electricity.[67]  *Third*, when faced with this Court's ruling finding a lack of antitrust injury, plaintiff still cannot explain the relationship between purchases of installed capacity by Con Ed and retail purchases of electricity by consumers such as himself.[68]  Accordingly, this Court adheres to its initial ruling that plaintiff lacks antitrust injury because he is an indirect purchaser who did not purchase electricity from Con Ed under a pre-existing cost-plus contract.

The fact that this action was brought as a putative class action does not salvage plaintiff's lack of antitrust standing.  Plaintiff admits that he could have reduced his purchases of retail electricity in response to an overcharge.[69]  To

---

[66]    *NRG Power Mktg., LLC v. Maine Pub. Utils. Comm'n*, 130 S. Ct. 693, 697 (2010) (emphasis added).

[67]    *See* Complaint ¶ 15 ("Companies selling electricity to consumers in New York City are required to make installed capacity payments that relate to their expected peak demand *plus* a share of reserve capacity (to cover extra facilities needed in case a generating facility breaks down.") (emphasis added).

[68]    *See* Pl. Mem. at 10 n.7 ("Plaintiff still contends that the exact manner in which the alleged overcharge appears on Plaintiff's bill is intensely factual and not appropriately resolved at the pleading stage.").

[69]    *See id.* at 9 ("While the Court is correct that individual consumers may reduce their usage in response to an overcharge, all Con Ed consumers, as a group or class, were

establish standing, however, plaintiff "'must allege and show that [he] personally

ha[s] been injured, not that injury has been suffered by other, unidentified

members of the class to which [he] belongs and which [he] purports to

represent.'"[70] Thus, "a plaintiff who lacks the personalized, redressable injury

required for standing to assert claims on his own behalf . . . lack[s] standing to

assert similar claims on behalf of a class."[71]

      Furthermore, while plaintiff characterizes his allegation describing

Con Ed as a complete pass-through entity as a "fact,"[72] this so-called fact is

nothing more than a legal conclusion that is not entitled to the presumption of

truthfulness.[73] As such, this allegation may be disregarded in determining whether

---

obligated to pay and did pay 100% of the capacity cost incurred under the pre-existing tariff, and
as a group, these consumers had no ability to reduce purchases so as to create a damage
allocation issue as between Con Ed and its customers.").

    [70]    *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (quoting *Simon v. Eastern Ky. Welfare
Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (quotation marks and citation omitted)).

    [71]    *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 135 (3d Cir.
2000).

    [72]    *See, e.g.*, Pl. Mem. at 10 (stating that "a full pass through is exactly what the facts
alleged establish" and that "Con Ed passed through 100% of Con Ed's costs for the purchase of
installed capacity in the NYC Capacity Market to its customers" (citing Complaint ¶ 7).

    [73]    *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("[T]he tenet that a court must
accept as true all of the allegations contained in a complaint is inapplicable to legal
conclusions."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that although
for purposes of a motion to dismiss, a court must take all of the factual allegations in the
complaint as true, courts "are not bound to accept as true a legal conclusion couched as a factual
allegation") (quotation marks and citation omitted). *See also Harris v. Mills*, 572 F.3d 66, 72
(2d Cir. 2009) ("First, although a court must accept as true all of the allegations contained in a

the Complaint states a plausible claim for relief under the *Iqbal/Twombly* pleading standard.[74]  In applying that standard, it appears that plaintiff has failed to plead a claim for relief under sections 1 and 2 of the Sherman Act, section 7 of the Clayton Act, and section 7 of the Donnelly Act.[75]  Although the instant motion seeks only reconsideration, I note plaintiff's pleading deficiencies in light of the inevitable appeal.[76]

In sum, plaintiff points to no controlling decisions or overlooked facts that would justify reconsideration of my ruling that plaintiff lacks antitrust standing.  Plaintiff merely rehashes the same arguments he made in his original opposition to defendants' motion to dismiss.  Reconsideration, however, is not a

---

complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (quotation marks and citation omitted, alteration omitted)).

[74]      "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'  At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950) (citation omitted).

[75]      *See* Memorandum of Law in Support of Defendants' Joint Motion to Dismiss at 27-33.

[76]      Of course, the Second Circuit can affirm this Court on any ground it sees fit, whether or not this Court relied on it as a ground for dismissal.  *See Freedom Holdings, Inc. v. Cuomo*, 624 F.3d 38, 49 (2d Cir. 2010) ("We may affirm the district court's decision on any ground appearing in the record.").

22

substitute for appeal.[77] Finally, in light of my rulings regarding the filed rate

doctrine, I need not consider plaintiff's arguments regarding the dismissal of his

state law claims. Having dismissed plaintiff's federal claims on two independent

grounds – the filed rate doctrine and lack of antitrust standing – I decline to

exercise supplemental jurisdiction over plaintiff's state law claims.[78] "In fact,

dismissal of pendent state law claims under such circumstances is generally

appropriate, as '[n]eedless decisions of state law should be avoided both as a

matter of comity and to promote justice between the parties, by procuring for them

a surer-footed reading of applicable law.'"[79] Therefore, I need not address whether

plaintiff's state law claims are preempted by federal law.

## III.   CONCLUSION

For the reasons stated above, plaintiff's motion for reconsideration is

denied in its entirety. The Clerk of the Court is directed to close this motion

(Document # 26).

---

[77]     *Cf. Stoller v. Pure Fishing, Inc.*, 528 F.3d 478, 480 (7th Cir. 2008) (stating that a motion for reconsideration under Federal Rule of Civil Procedure 60(b) is not a substitute for appeal).

[78]     *See Ross v. Woods*, No. 09–4133–pr, 2011 WL 781894, at *1 (2d Cir. Mar. 8, 2011) (stating that district courts "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction") (quoting 28 U.S.C. § 1367(c)(3)).

[79]     *Id.* (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (alteration in original)).

23

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:  New York, New York
        May 27, 2011

- Appearances -

**For Plaintiff:**

Judith L. Spanier, Esq.
Abbey Spanier Rodd & Abrams, LLP
212 East 39th Street
New York, NY 10016
(212) 889-3700

Daniel J. Sponseller, Esq.
409 Broad Street, Suite 200
Sewickley, PA 15143
(412) 741-4422

**For Defendants:**

John H. Lyons, Esq.
Tara S. Emory, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue N.W.
Washington, D.C. 20005
(202) 371-7000

Jon R. Roellke, Esq.
Anthony R. Van Vuren, Esq.
Bingham McCutchen, LLP
2020 K Street, NW
Washington, D.C. 20006
(202) 373-6000